UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN MARICULTURE, INC.,
a Florida corporation,

    Plaintiff,

v.                                   CASE NO. 2:20-cv-00711-JLP-MRM

SYAQUA AMERICAS, INC.,
a Florida corporation,

    Defendant.

_____/

## DEFENDANT'S PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(6)[1]

    Defendant SyAqua Americas, Inc. ("SyAqua") files this Partial Motion to Dismiss under Rule 12(b)(6) to dismiss Plaintiff American Marticulture, Inc. ("AMI")'s unfair competition and trade secret misappropriation claims against SyAqua, and would respectfully show the Court as follows:

### PRELIMINARY STATEMENT

    On September 14, 2020, AMI filed the instant action against SyAqua. (Doc. #1).  As the plethora of back-and-forth correspondences between the Parties and their respective counsel unequivocally demonstrate, AMI filed suit knowing full well that SyAqua's filing of a lawsuit against it for injunctive relief and damages for misappropriation of trade secrets under federal and Florida law, breach of contract, and unfair competition under federal and Florida law was

---

[1] The Middle District of Florida has followed the majority rule that a partial 12(b) motion enlarges the time to file an answer, and as such, Defendant SyAqua need not file an answer while the instant partial motion to dismiss is pending. *Jacques v. First Liberty Ins. Corp.*, No. 8:16-cv-1240-T-23TBM, 2016 U.S. Dist. LEXIS 80556 (M.D. Fla. June 9, 2016).  Nonetheless, SyAqua hereby provides notice that it denies each and every allegation of wrongdoing and of alleged harm, damages, and threatened harm set forth in AMI's Complaint.

imminent. Additionally, with full and actual knowledge that the *PB Legacy, Inc. v. Am. Mariculture, Inc.*, Case No. 2:17-cv-9-FtM-29CM (the "Primo matter") matter, pending before Judge Steele, is a similar and/or related case under Local Rule 1.04, AMI wrongfully filed its Related Case Notice indicating to the Court that there were no cases or matters within the purview of this rule. (Doc. #7).   Given Judge Steele's recent rulings in the Primo matter, whether AMI did this to avoid Judge Steele is unknown to SyAqua at this time.[2]  What is known to SyAqua is that AMI's sparse and conclusory allegations in its Complaint should be dismissed for failing to state a cause of action.  Indeed, each of AMI's alleged claims for trade secret misappropriation and unfair competition fail to state sufficient allegations of ultimate fact to support each of the elements of the claims. Instead, the Complaint is based on supposition, conjecture, guesswork, and conclusory statements and is devoid of any concrete allegations of fact to support the claims.

Specifically, the following Counts in AMI's Complaint should be dismissed:

(1) Count III for alleged violations of the Defend Trade Secrets Act ("DTSA") should be dismissed because: a) AMI  has not identified and/or averred the alleged trade secret with reasonable particularity; b) AMI has only stated a formulaic recitation of the elements of a cause of action under the DTSA; c) AMI has not provided any factual predicate as to how SyAqua "misappropriated" its trade secret including whether SyAqua used and/or disclosed the trade secret or "protected" information; d) AMI has not pled any facts establishing that such use, disclosure, or threatened use or disclosure is to AMI's detriment; and e) the Parties' Production Agreement ("TPA") precludes Count III as pled given the TPA granted SyAqua the right to access AMI's breeding

---

[2] *See* Case No. 2:17-cv-9-FtM-29CM (Doc. #. 306).

records and process the information gleaned from the same for purposes related to the TPA.

(2) Count IV for alleged violations of the Florida Uniform Trade Secret Act ("FUTSA") should be dismissed because: a) AMI has not identified and/or averred the alleged trade secret with reasonable particularity; b) AMI has only stated a formulaic recitation of the elements of a cause of action under the FUTSA; c) AMI has not provided any factual predicate as to how SyAqua "misappropriated" its trade secret including whether SyAqua used and/or disclosed the trade secret or "protected" information; d) AMI has not pled any facts establishing that such use, disclosure, or threatened use or disclosure is to AMI's detriment; and e) the TPA precludes Count IV as pled given the TPA granted SyAqua the right to access the breeding records and process the information gleaned from the same for purposes related to the TPA.

(3) Count I for alleged unfair competition under the Lanham Act should be dismissed because: a) AMI has not asserted any actual facts demonstrating that their marks are valid and legally protectable; b) AMI has not asserted any actual facts demonstrating it had prior rights to the mark at issue; c) AMI has not asserted any actual facts of unfair competition by SyAqua; d) AMI has not asserted any actual facts of actual confusion by customers; e) AMI has only stated a formulaic recitation of the elements of a cause of action under the Lanham Act; f) AMI has not asserted any actual facts demonstrating any actual or threatened harm; and g) AMI has not asserted any actual facts demonstrating that SyAqua's alleged violation of the Lanham is causally related to any actual or threatened harm.

(4) Count II for alleged unfair competition under Florida law including the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") should be dismissed because: a) AMI has not asserted any facts regarding the circumstances of SyAqua's actions including any sufficient facts detailing alleged deceptive and/or fraudulent conduct; b) AMI has not asserted any facts that its customers were confused by SyAqua's alleged actions; c) AMI has not asserted any actual facts of unfair competition by SyAqua; d) AMI has only stated a formulaic recitation of the elements of a cause of action for unfair competition under Florida law; f) AMI has not asserted any actual facts demonstrating any actual or threatened harm; and g) AMI has not asserted any actual facts demonstrating that SyAqua's alleged unfair competitive practices under Florida law is causally related to any actual or threatened harm.

## FACTUAL BACKGROUND

The pertinent and well-pleaded facts detailing SyAqua and AMI's business relationship are thoroughly set forth in SyAqua's Amended Verified Complaint in Case No. 2:20-cv-00736-JLB-MRM (Doc. # 27- SyAqua's Amended Verified Complaint).  In short, AMI committed multiple violations of the TPA including but not limited to misappropriation of SyAqua's trade secrets.  As such, SyAqua lawfully and rightfully terminated the TPA with cause effective as of July 31, 2020.

## ARGUMENT AND AUTHORITIES

### A.  DISMISSAL STANDARD UNDER RULE 12(B)(6)

Where the Complaint is attacked by a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the Complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Although the Court must accept the factual allegations in the Complaint as true,

conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-680 (2009); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001).  Indeed, AMI's obligation to provide the 'grounds' of its 'entitle[ment] to relief' **requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do** . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007) (emphasis added).  In addition, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Under well-established Eleventh Circuit law, the Court also applies the *Twombly-Iqbal* plausibility standard to a complaint subject to a Rule 12b(6) motion to dismiss.  *Lane v. Philbin*, 835 F.3d 1302, 1305 (11th Cir. 2016); *ELI Research, LLC v. Must Have Info Inc.*, No. 2:13-cv-695-FtM-38CM, 2014 U.S. Dist. LEXIS 127340, at *5-6 (M.D. Fla. Sep. 11, 2014) (internal citations omitted).  Under this standard, a claim is plausible if AMI has alleged facts that "allow the court to draw the reasonable inference that SyAqua is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In applying the plausibility standard, AMI must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that support its claims. *ELI Research, LLC*, 2014 U.S. Dist. LEXIS 127340, at *6. "Thus, 'the-defendant-unlawfully harmed me accusation' is insufficient" and "**a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement**." *Id.* (internal citations omitted) (emphasis added). Moreover, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id. quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986).  As such, dismissal or partial

dismissal is warranted when a complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

**B.  DISMISSAL OF AMI'S CLAIM FOR TRADE SECRET MISAPPROPRIATION**

AMI's claims for trade secret misappropriation (Counts III and IV) under the DTSA and FUTSA should be dismissed because AMI's Complaint does not allege "enough facts to state a claim to relief that is plausible on its face."

To bring a claim under the DTSA, AMI must plausibly allege that it (i) "possessed information of independent economic value" that (a) "was lawfully owned by" AMI and (b) for which AMI "took reasonable measures to keep secret," and (ii) that SyAqua "used and/or disclosed that information," despite (iii) "a duty to maintain its secrecy." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285 (M.D. Fla. 2018) *citing Primo Broodstock, Inc., v. Am. Mariculture, Inc.*, 2017 U.S. Dist. LEXIS 64886, *26-27 (M.D. Fla. Apr. 27, 2017).

The elements for AMI's claim for misappropriation of trade secrets under the FUTSA are similar.  Notably, AMI must show that "(1) [it] possessed secret information and took reasonable steps to protect its secrecy and (2) the secret [it] possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1290 (S.D. Fla. 2001).  Moreover, AMI must plead actual or threatened misappropriation to the disadvantage of the owner of a trade secret as merely repeating the remaining elements of a claim for misappropriation of trade secrets is not sufficient. *Id.* at 1293; *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1326, 1335 (S.D. Fla. 2001).

### i. AMI has not described the subject matter of the trade secret with sufficient particularity

Although the Complaint need not "spell out the details of the trade secret," *Prov Int'l, Inc. v. Rubens Dalle Lucca*, No. 8:19-cv-978-T-23AAS, 2019 U.S. Dist. LEXIS 187060, at *8 (M.D. Fla. Oct. 29, 2019) (internal citations omitted), the Complaint must " the complaint must describe the subject matter of the trade secret with sufficient particularity to separate [the trade secret] from matters of general knowledge in the trade." *Id.*; *see Revello Med. Mgmt. v. Med.-Data Infotech USA, Inc.*, 50 So. 3d 678, 679-680 (Fla. Dist. Ct. App. 2010).  "Reasonable particularity requires more than generic descriptions of categories, such a list of components to which the alleged trade secrets relate." *Jabil Inc. v. Essentium, Inc.*, No. 8:19-cv-1567-T-23SPF, 2020 U.S. Dist. LEXIS 24371, at *11 (M.D. Fla. Feb. 12, 2020).

Here, AMI's allegation that its proprietary and confidential shrimp breeding records constitute trade secrets within the meaning of DTSA and FUTSA is a classic example of a conclusory allegation that is no more than a label and/or a formulaic recitation of the elements of a cause of action. *See* (Doc. # 1 at ¶¶ 8 and 43). Thus, AMI's conclusory assertion that the SyAqua misappropriated "its proprietary and confidential shrimp breeding records" neither notifies SyAqua as to what shrimp breeding records it allegedly misappropriated nor demonstrates that the shrimp breeding records possessed information of independent economic value which was lawfully owned by AMI.  Indeed, the substantially similar Primo matter casts substantial doubt on whether AMI lawfully owns the "lines of specific pathogen free shrimp broodstock that are renowned for their survival characteristics" that are the subject of the alleged misappropriated breeding records. *See PB Legacy, Inc. v. Am. Mariculture, Inc.*, Case No. 2:17-cv-9-FtM-29CM (Doc. #20-Amended Complaint and all attached exhibits).

As such, Counts III and IV should be dismissed on this ground alone.

**Page 7 of 13**

### ii. AMI has not pled a plausible claim for trade secret misappropriation under the DTSA and FUTSA

Even *arguendo*, AMI did describe the subject matter of the trade secret with sufficient particularity under the DTSA and/or FUTSA, AMI has not provided any factual predicate as to how SyAqua purportedly "misappropriated" AMI's trade secret including whether SyAqua used and/or disclosed the trade secret or "protected" information.

It is well-established that for AMI to recover damages on its trade-secret misappropriation claims, "[SyAqua] must have actually put the trade secret to some commercial use [because] [t]he law governing protection of trade secrets essentially is designed to regulate unfair business competition, and is not a substitute for criminal laws against theft or other civil remedies for conversion." *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974)[3]; *see also Perdue Farms Inc. v. Hook*, 777 So. 2d 1047, 1052 (Fla. 2d DCA 2001) ("'The plaintiff fulfills its burden of proving damages by showing the misappropriation, the subsequent commercial use, and introduces evidence by which the jury can value the rights the defendant has obtained.'"); MILGRIM ON TRADE SECRETS § 15.01 ("It is fundamental that even if defendant's actual or threatened wrongful use is established, plaintiff must nonetheless establish that such use is to plaintiff's detriment.").

Here, AMI has merely stated <u>**a formulaic recitation of the elements of a cause of action under the DTSA**</u> as it baldly and conclusory avers that "Plaintiff's records were acquired by Defendant without Plaintiff's authorization and through Defendant's intentional misrepresentations to Plaintiff and acts of espionage conducted by electronic or other means" and that Defendant "knowingly and without Plaintiff's authorization copying, duplicating,

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

photographing, uploading, photocopying, replicating, transmitting, delivering, sending, communicating, and conveying such information with intent to convert Plaintiff's shrimp breeding records." *See* (Doc. #1 ¶¶ 44-48). Plaintiff avers the same under its FUTSA claim.

In short, AMI's claims that SyAqua "misappropriated" its trade secrets is at best no more than a 'the-defendant-unlawfully-harmed me accusation'.  As such, absent additional factual support, AMI's **formulaic recitation** alleging that SyAqua "misappropriated" it trade secrets in violation of DTSA and FUTSA law does not suffice to cross the line from probability to plausibility. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (emphasis added).  Additionally, SyAqua surmised the likely reason AMI has offered little to no factual support for its trade secret misappropriation claims against it is because such claims are factually implausible given the plain language of the Parties' Production Agreement ("TPA") which states:

> During the term of this Agreement, the parties shall maintain books records in accordance with industry standards relating to this Agreement **and make such books and records available for review during normal business hours**.

(Doc. #1-Ex. "A" at ¶ 6) (emphasis added).  Indeed, it is beyond reasonable dispute that the TPA granted SyAqua the right to access the breeding records and process the information gleaned from review of said records for purposes related to the TPA. As such, it appears that AMI's trade secret misappropriation claims against SyAqua are merely a façade, and are, instead, AMI's prophylactic attempt to ward off SyAqua's well-detailed and supported claims against AMI for among other things AMI's theft and misappropriation of SyAqua's trade secrets. *See Syaqua Americas, Inc. v. American Mariculture, Inc. et al*, Case 2:20-cv-00736-JLB-MRM (Doc. # 27- SyAqua's Amended Verified Complaint).

As AMI's factual allegations in support of its trade secret misappropriation claims against SyAqua fall woefully short of raising a right to relief above the speculative level, the Court should dismiss these claims.

### C.  DISMISSAL OF AMI'S CLAIM FOR UNFAIR COMPETITION UNDER THE LANHAM ACT

AMI's claim under the Lanham Act (Count I) for unfair competition should be dismissed because AMI has not asserted any actual facts of unfair competition by SyAqua or any actual confusion by customers. There is ample authority on the elements needed to state a claim for unfair completion. While these authorities vary slightly, all agree that a defendant must engage in an act to market itself or its products in a similar way that will result in customer confusion.  Thus, "the legal standard for unfair competition . . . and trademark infringement under both the Lanham Act and common law has been held to be essentially the same." *Turner Greenberg Assocs., Inc. v. C & C Imports, Inc*., 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004).

To state a claim under section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), AMI must show that: 1) the mark is valid and legally protectable; 2) AMI had prior rights to the mark at issue; and 3) SyAqua's use of the mark is likely to create confusion concerning the origin of the goods or services. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997).  Just like AMI's bald and conclusory trade secret misappropriation claims, AMI has merely stated a formulaic recitation of the elements of a cause of action under the Lanham Act as AMI  has set forth no factual predicate to demonstrate any of these three critical elements to state a cognizable claim under 15 U.S.C. § 1125(a).

Accordingly, AMI's mere formulaic recitation of the elements of a cause of action under 15 U.S.C. § 1125(a)(1)(A) will not do as the glaring factual omissions necessary to make out the

*prima facie* elements of an infringement claim under the Lanham Act has rendered AMI's Complaint defective.  As such, the Court should dismiss this claim.

### D. Dismissal of AMI's Claim For Unfair Competition Under Florida Law

Similarly, AMI's Count II claim for unfair competition under Florida law should be dismissed because AMI has not asserted any actual facts of unfair competition by SyAqua or any actual confusion by customers.  This Court has held that to state a claim for unfair competition under Florida law, a party must allege: (1) deceptive or fraudulent conduct of a competitor, (2) that the competitors compete for a common pool of customers, and (3) the likelihood of customer confusion through improper marketing or branding. *Third Party Verification, Inc. v. Signaturelink, Inc.*. 492 F.Supp.2d 1314, 1324-25 (M.D. Fla. 2007) (allowing claim to proceed where it was alleged that specific and identified advertisements caused customer confusion); *see also Stagg Shop of Miami, Inc. v. Moss,* 120 So.2d 39, 40 (Fla. 2d DCA 1960) ("customer confusion is the gist of the actionable wrong.").  Moreover, to state a claim for a traditional FDUPTA violation, AMI must establish the following: "1) a deceptive act or unfair practice; 2) causation; and 3) actual damages.  *Blair v. Wachovia Mortg. Corp.*, No. 5:11-cv-566-Oc-37TBS, 2012 U.S. Dist. LEXIS 33941, at *7 (M.D. Fla. Mar. 13, 2012) (holding that to the extent Plaintiff seeks to allege a traditional FDUPTA claim, the Court finds such claims are required to satisfy the heightened pleading standard of Rule 9(b)).

Here, AMI's unfair competition claim under Florida law must be dismissed because almost nothing is alleged regarding the circumstances of SyAqua's actions including any sufficient facts detailing alleged deceptive and/or fraudulent conduct or even if any of the AMI's customers were confused by SyAqua's alleged actions. Notably, AMI has also failed to mention anything regarding the genesis of the "Kentucky line", and with good reason given SyAqua created and actually owns

the "Kentucky line." Equally absent in the Complaint is the mention of any specific advertisements or marketing efforts that were and/or are being used to cause customer confusion by SyAqua. In addition, there is absolutely no factual averment detailing the harm or the potential harm AMI has or will suffer.

In short, AMI's allegations relating to SyAqua's alleged deceptive and/or fraudulent conduct is factually deficient and there are no factual averments tending to show any causal connection to any actual or imagined harm.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts I, II, III, and IV of Plaintiff AMI's Complaint.

## PRAYER

WHEREFORE, Defendant SyAqua respectfully prays that the Court grant its motion, dismiss Counts I, II, III, and IV of Plaintiff AMI's Complaint, and award Defendant all other relief at law and in equity to which it may show itself justly entitled.

DATED: October 20, 2020

Respectfully submitted,

By: /s/ *Brian M. Gargano*
Brian M. Gargano (admitted *pro hac vice*)
Texas State Bar No. 24102898
bgargano@nguyen-chen.com
Jiangang Ou (admitted *pro hac vice*)
New York State Bar No. 5451133
jou@nguyen-chen.com
NGUYEN & CHEN LLP
11200 Westheimer Road, Suite 120
Houston, Texas 77042
Telephone: (832) 767-0339
Facsimile: (832) 767-0669
service@nguyen-chen.com

Matthew B. Roepstorff

**Page 12 of 13**

Florida Bar No. 91617
GrayRobinson, P.A.
1404 Dean Street, Suite 300
Fort Myers, FL 33901
(239) 340-7936
(239) 321-5334 facsimile
matthew.roepstorff@gray-robinson.com
anne.migliore@gray-robinson.com

ATTORNEYS FOR DEFENDANT

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that in accordance with the Federal and Local rules the foregoing document is being filed on this 20th day of October 2020 via the Court's CM/ECF filing system, which will serve a copy electronically on all counsel of record.

*/s/ Brian M. Gargano*
Brian M. Gargano