UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN MARICULTURE, INC.,
a Florida corporation,

       Plaintiff,

v.                          Case No: 2:20-cv-711-JES-MRM

SYAQUA AMERICAS, INC., a
Florida corporation,

       Defendant.

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss for Failure to State a Claim (Doc. #24) filed on October 20, 2020. Plaintiff filed a Corrected Response in Opposition to Motion (Doc. #31) on November 4, 2020, and defendant filed a (Corrected) Reply (Doc. #39) on November 19, 2020.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief

above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**II.**

Taking all the allegations as true, plaintiff American Mariculture, Inc. (plaintiff or AMI) brought suit against Syaqua

Americas, Inc. (defendant or Syaqua) for unfair competition and false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)), for theft of trade secrets under the Defend Trade Secrets Act (18 U.S.C. § 1832), and for breach of contract and a duty of good faith and fair dealing, as well as for violations of the Florida Uniform Trade secrets Act (Fla. Stat. §§ 688.001, et seq.). (Doc. #1, ¶ 1.)  Plaintiff offers and sells shrimp both domestically and internationally under its trade name, AMI, and a particular line of shrimp under the trade name, "Kentucky line". Plaintiff also produces shrimp broodstock, including a line of specific pathogen free shrimp broodstock, in competition with defendant on the world market. (Id., ¶¶ 7-8.)

On or about October 15, 2016, the parties executed a Memorandum of Understanding for plaintiff to produce shrimp broodstock for defendant at plaintiff's facilities in St. James City, Florida.  After expiration of the initial two-year term of the Memorandum, plaintiff terminated and gave defendant 12 months advance notice of the obligation to remove any remaining shrimp and materials from plaintiff's facility.  Defendant proposed a revised agreement granting more favorable treatment to plaintiff. (Id., ¶ 9.)

On or about October 1, 2018, the parties into a second agreement, the Production Agreement, providing for plaintiff to continue using its shrimp breeding facility to grow shrimp provided

by defendant for subsequent sale outside the United States. (Id., ¶ 10.) Section 1 of the Production Agreement provides an initial 5 year term ending September 30, 2023, with termination not permitted before this date without cause, including acts of fraud, theft, and other material violations of law constituting a breach. (Id., ¶¶ 12-13.)

Beginning in late 2018, defendant repeatedly breached the Production Agreement by failing to provide shrimp broodstock sufficient to permit plaintiff to produce maximally healthy post-larvae shrimp, and therefore healthy shrimp broodstock. (Id., ¶ 23.) Through 2019 and 2020, defendant breached the Production Agreement by disseminating a marketing brochure in India that falsely claimed that defendant was in possession of the Kentucky line from AMI and that plaintiff's production facilities belonged to defendant, and by falsely claiming association with plaintiff's various lines of shrimp in both China and Indonesia. (Id., ¶¶ 25-26.) Throughout 2020, defendant failed to pay invoiced packaging and shipping fees in the amount of $50,000. (Id., ¶ 24.)

More specifically, on or about January 16, 2020, defendant breached section 1.e.(i) of the Production Agreement by engaging in theft of confidential and trade secret information by "surreptitiously" copying breeding records of AMI shrimp that directly compete against Syaqua shrimp. (Id., ¶ 20.) On or about March 13, 2020, defendant again breached the same section of the

Production Agreement by engaging in theft of the AMI shrimp tissue samples taken without plaintiff's authorization. (Id., ¶ 21.) On or about September 1, 2020, defendant failed to make the monthly base facility overhead service fee of $30,000 per month and failed to provide plaintiff with 1,000 pairs of commercial production shrimp broodstock. (Id., ¶¶ 22, 27.)

**III.**

Defendant seeks to dismiss Count I for the unfair competition allegations under the Lanham Act, Count II for the unfair competition under the state counterpart, the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Count III for alleged violations of the Defend Trade Secrets Act (DTSA), Count IV for alleged violations of the Florida Uniform Trade Secret Act (FUTSA).

**1. Lanham Act & FDUTPA**

"The legal standards we apply to [the FDUPTA] claim are the same as those we have applied under section 43(a) of the Lanham Act. [ ] Plaintiff's failure to establish a likelihood of confusion as to its Lanham Act claim also extinguishes its claim under Florida law." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1345 (11th Cir. 2012) (citations and internal quotation marks omitted).

"Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition" in interstate commerce, and "forbids unfair trade practices involving infringement of

5

trademarks, even in the absence of federal trademark registration." Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir. 2007) (quoting Univ. of Florida v. KPB, Inc., 89 F.3d 773, 775–76 (11th Cir. 1996) (per curiam)). "Section 43(a) is remedial in nature and should be interpreted and applied broadly so as to effectuate its remedial purpose." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001). Under the Lanham Act,

> **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce[1] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

---

[1] The term "commerce" is all commerce as "may lawfully be regulated by Congress." 15 U.S.C. § 1127.

15 U.S.C. § 1125(a). FDUTPA regulates unfair or deceptive acts or practices in commerce as unlawful, and due consideration is given to the interpretations of the Federal Trade Commission and the federal courts. Fla. Stat. § 501.204.

Plaintiff asserts a common law right to the trade name of "AMI" and "Kentucky line". (Doc. #1, ¶ 7.) Under common law, "trademark rights are appropriated only through actual prior use in commerce. . . . Thus, actual and continuous use is required to acquire and retain a protectible interest in a mark." Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1022–23 (11th Cir. 1989) (citation and footnote omitted).

**A. Count I**

In Count I, the Complaint provides that defendant's unauthorized use in commerce of the marks, AMI and Kentucky line "is likely to cause consumers to believe, contrary to fact, that Defendant's shrimp are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff." (Doc. #1, ¶ 31.) Defendant's use in commerce of the two marks is alleged to be a false designation of origin and misleading. (Id., ¶ 32.) Defendant's conduct is described as willful, and "intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff." (Id., ¶ 33.) Plaintiff alleges that defendant's conduct caused immediate

7

and irreparable harm and injury to plaintiff, and its goodwill and reputation. (Id., ¶ 35.)

Defendant argues that Count I should be dismissed for not asserting any actual facts demonstrating that the marks are valid and legally protectable, or that AMI had prior rights to the mark at issue. Defendant also argue that AMI has not asserted any actual facts of unfair competition by defendant, or actual confusion by customers but only "stated a formulaic recitation of the elements". Defendant asserts that there are no actual facts demonstrating actual or threatened harm, or that defendant's alleged violation caused any actual or threatened harm. (doc. #24, p. 3.)

"[T]o prevail under 15 U.S.C. § 1125(a), a party must show (1) that it had prior rights to its mark or name and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir.), opinion modified on reh'g, 122 F.3d 1379 (11th Cir. 1997).

Although plaintiff has alleged a common law prior interest in marks, plaintiff does not allege a continuous and ongoing use of a protectible interest that has not been abandoned. Further, plaintiff has generically asserted that the "unauthorized use in commerce of the marks" will confuse consumers and the conduct will

continue to damage plaintiff, but there are no facts as to what actions defendant has taken to use the marks in such a way as to cause confusion for consumers other than "disseminating a marketing brochure in India" claiming "possession of the Kentucky line from AMI", that plaintiff's production facilities "belonged to Defendant", and "falsely claiming association with Plaintiff's various lines of shrimp" in China and Indonesia[2]. (Doc. #1, ¶¶ 26, 31.) None of the facts allege that the actions by defendant by possessing or being affiliated with plaintiff made the use of the mark adopted or used by defendant in a confusing manner. The motion will be granted as to Count I with leave to amend.

**B. Count II**

In Count II, the Complaint alleges that defendant's unauthorized use in commerce of the marks "is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's shrimp, and is likely to cause consumers to believe, contrary to fact, that Defendant's shrimp are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff." (Id., ¶ 38.) Plaintiff alleges that defendant's conduct is unfair competition,

---

[2] The Production Agreement allows for both companies to "offer their breeders on a best effort's basis to existing or potential customers worldwide." (Doc. #1-1, ¶ 4a.)

9

and the conduct is causing immediate and continuing damage. (Id., ¶¶ 39-40.)

"FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Under FDUTPA, an act is deceptive if there is a "'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" Peterbrooke Franchising of Am., LLC v. Miami Chocolates, LLC, 312 F. Supp. 3d 1325, 1343 (S.D. Fla. 2018) (citation omitted).

Defendant argues that Count II should be dismissed because plaintiff has not asserted any facts that its customers were confused by defendant's action, or of unfair competition. Defendant further argues that plaintiff has only stated a formulaic recitation of the elements, and no actual facts demonstrating harm. (Doc. #24, p. 4.) Plaintiff asserts that the three elements are met. (Doc. #31, p. 11.)

As with the Lanham Act, the Court finds that insufficient facts are provided for purposes of stating a plausible claim. More specifically, it is unclear what act or omission defendant committed to mislead consumers. An "association" with plaintiff's marks is vague, and damages beyond "goodwill and reputation, doc. #1, ¶ 40, do not reflect what actual damages plaintiff's may be

suffering. The motion will be granted as to Count II, also with leave to amend.

**2. DTSA & FUTSA**

Counts III and IV allege a theft of trade secrets under both the federal Defend Trade Secrets Acts (DTSA) and Florida's Uniform Trade Secrets Act (FUTSA). Under the DTSA,

> the term "trade secret"[3] means all forms and types of financial, business, scientific, technical, economic, or engineering information . . . if—
>
> **(A)** the owner thereof has taken reasonable measures to keep such information secret; and
>
> **(B)** the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

---

[3] Under FUTSA, trade secret "means information, including a formula, pattern, compilation, program, device, method, technique, or process that:

> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4).

18 U.S.C. § 1839(3).[] "Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection." Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1410 (11th Cir. 1998) (citing Bestechnologies, Inc. v. Trident Envtl. Sys., Inc., 681 So. 2d 1175, 1176 (Fla. 2d DCA 1996)). Ultimately, "[w]hether information constitutes a 'trade secret' is a question of fact." Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1291 (11th Cir. 2003) (citations omitted).

As relevant here, to "misappropriate" a trade secret means to

> disclos[e] or use . . . a trade secret of another without express or implied consent by a person who . . . [a]t the time of disclosure or use, knew or had reason to know that her or his knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

18 U.S.C. 1839(5)(B)(ii)(II); see also Fla. Stat 688.002(2).

Primo Broodstock, Inc. v. Am. Mariculture, Inc., No. 2:17-CV-9-FTM-29CM, 2017 WL 1502714, at *10–11 (M.D. Fla. Apr. 27, 2017), order clarified sub nom. PB Legacy, Inc v. Am. Mariculture, Inc., No. 2:17-CV-9-FTM-29NPM, 2020 WL 104154 (M.D. Fla. Jan. 9, 2020).

In Count III, plaintiff alleges that AMI's "propriety and confidential shrimp breeding records constitute trade secrets", and plaintiff restricts access to its shrimp breeding records, even internally, and against disclosure to third parties. (Doc. #1, ¶ 43.) Plaintiff alleges that defendant violated the DTSA by

"knowingly obtaining Plaintiff's shrimp breeding records by fraud, artifice, and deception and, thereafter, stealing, appropriating, taking, carrying away, and concealing the theft of Plaintiff's shrimp breeding records", and "knowingly and without Plaintiff's authorization copying, duplicating, photographing, uploading, photocopying, replicating, transmitting, delivering, sending, communicating, and conveying such information" with intent to convert Plaintiff's shrimp breeding records, and "knowingly and without Plaintiff's authorization receiving and possessing such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization. Plaintiff also alleges attempt of each of the above. (Id., ¶¶ 45-48.)

In Count IV, plaintiff incorporates these paragraphs from Count III, and further alleges that AMI's "proprietary and confidential shrimp breeding records constitute trade secrets within the meaning of Chapter 688.002(4), Florida Statutes, where they constitute information, including programs, methods, techniques, and processes that are both protected from disclosure by AMI and derive independent economic value from not generally being known to or ascertainable by others, including Defendant, who can obtain economic value from disclosure or use of such information." (Id., ¶ 51.) Plaintiff goes on to cite the language from Chapter 688.002(2), Florida Statutes, for the meaning of "misappropriation" where Plaintiff's records were acquired by

Defendant without Plaintiff's authorization and through Defendant's intentional misrepresentations to Plaintiff and acts of espionage conducted by electronic or other means." (Id., ¶ 52.)

To state a claim under the DTSA, plaintiff must establish that defendant possessed "information" of "independent economic value" that was lawfully owned by AMI and for which AMI took reasonable measures to keep secret, and defendant "used and/or disclosed" that "information," despite having a duty to maintain its secrecy. Primo Broodstock, 2017 WL at *11. For FUTSA, plaintiff must show that it possessed a "trade secret", and the secret was "misappropriated. Sentry Data Sys., Inc. v. CVS Health, 361 F. Supp. 3d 1279, 1293 (S.D. Fla. 2018).

Defendant argues that Count III should be dismissed because AMI has not identified an alleged trade secret with reasonable particularity, only a formulaic recitation is provided of the elements, and there is no factual predicate as to how Syaqua misappropriated AMI's trade secret. Defendant argues that AMI has not pled facts establishing that the disclosure or threatened disclosure was to AMI's detriment, and the Production Agreement precludes the claim because Syaqua was given the right to access the breeding records. (Doc. #24, p. 2-3.) As to Count IV, defendant presents essentially the same arguments. (Id., p. 3.)

14

Each paragraph in Count III above is essentially a verbatim recitation of the statutory language found in 18 U.S.C. § 1832(a), and the paragraphs in Count IV citing Fla. Stat. § 688.002, et seq., also simply mirror the statutory language. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [ ] Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678. In this case, plaintiff does specifically identify the trade secret as "propriety and confidential shrimp breeding records", the measures taken to protect the information, that defendant used or disclosed the information with intent to convert plaintiff's shrimp breeding records despite demands for the return of the information and the requirement of secrecy. The additional general facts alleged are as follows:

> 20. On or about January 16, 2020, Defendant breached section 1.e.(i) of the Production Agreement by engaging in the theft of confidential and trade secret information belonging to Plaintiff without Plaintiff's authorization. Specifically, contrary to Plaintiff's express instructions, Defendant surreptitiously copied confidential and trade secret information consisting of breeding records pertaining to AMI shrimp that directly compete against SyAqua shrimp in various international markets. Despite repeated demands, Defendant has failed to return the confidential and trade secret information stolen.

21. On or about March 13, 2020, Defendant again breached section 1.e.(i) of the Production Agreement by engaging in the theft of AMI shrimp tissue samples taken Plaintiff's authorization.

(Doc. #1, ¶¶ 20-21.)  Although some of the language is formulaic, the Court finds that plaintiff has plausibly stated a claim under both the DTSA and FUTSA.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss for Failure to State a Claim (Doc. #24) is **GRANTED IN PART AND DENIED IN PART.**  The motion is granted as to Counts I and II and the Complaint (Doc. #1) **without prejudice** to filing an Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order.  The motion is otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this ___7th___ day of June, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record