UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

AMERICAN MARICULTURE, INC.,
a Florida corporation and
AMERICAN PENAEID, INC.,

      Plaintiffs,

v.                              Case No:  2:20-cv-711-JES-MRM

SYAQUA AMERICAS, INC., a
Florida corporation and
SYAQUA GROUP PTE. LTD.,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on defendant's Motion to Strike Plaintiff's Jury Demand (Doc. #49) filed on January 5, 2021. Plaintiff filed a Response in Opposition (Doc. #57) on February 22, 2021.

The relevant allegations in the Complaint (Doc. #1)[1] provide that plaintiff and defendant executed a Memorandum of Understanding in 2016 for plaintiff to produce shrimp broodstock for defendant at plaintiff's facilities in St. James City, Florida. After the expiration of the initial two-year term, plaintiff terminated the Memorandum and gave defendant 12 months advance notice of the obligation to remove any shrimp and materials from

---

[1] An Amended Complaint (Doc. #61) was filed on June 21, 2021, after the Demand for Jury Trial (Doc. #46) and after the motion to strike the Demand was filed.  The Court will focus on the allegations in the original Complaint (Doc. #1).

the facility.  In 2019, the parties entered into a second agreement providing that plaintiff would continue to utilize its own shrimp breeding facility to grow out shrimp provided by defendant for subsequent sale by defendant outside the United States.  This Production Agreement has an initial five-year term ending in September 2023, and defendant cannot terminate prior to the end of this term without cause.

Plaintiff alleges that defendant breached the Production Agreement by engaging in the theft of confidential and trade secret information consisting of breeding records pertaining to plaintiff's shrimp.  (Doc. #1, ¶ 20.)  Plaintiff also alleges a breach of the Production Agreement by engaging in theft of shrimp tissue samples.  (Id., ¶ 21.)  Plaintiff alleges that defendant breached the Production Agreement by disseminating a marketing brochure in India that falsely claimed that defendant was in possession of the Kentucky line, and falsely claimed that defendant owned plaintiff's production facilities.  (Id., ¶ 25.)  Plaintiff alleges that defendant breached the Agreement by falsely claiming association with plaintiff's various lines of shrimp in both China and Indonesia.  (Id., ¶ 26.)

Count I of the Complaint alleges unfair competition under the Lanham Act and Count II alleges the same under Florida law. Plaintiff alleges that "Defendant's unauthorized use in commerce of the marks, "AMI" and "Kentucky line" . . . constitutes use of a false designation of origin and misleading description and

representation of fact", and that "Defendant's conduct as alleged herein constitutes unfair competition in violation of Chapter 501.204, Florida Statutes.  (Id., ¶¶ 32, 39.) Count III alleges a theft of trade secrets under the Defend Trade Secrets Act and Count IV alleges the same under state law.  Plaintiff alleges that its shrimp breeding records were misappropriated by intentional misrepresentations and acts of espionage.  (Id., ¶¶ 44, 52.) Count V alleges a breach of the Production Agreement and Count VI alleges a breach of the duty of good faith and fair dealing.

Defendant argues that the demand for a trial by jury must be stricken because plaintiff waived its right to a jury trial for all claims "arising out of" the Production Agreement. (Doc. #49, p. 2.)  Plaintiff agrees that Count VI for breach of the duty of good faith and fair dealing arises out of the Production Agreement and is covered by the jury waiver provision.  However, plaintiff takes the position that a jury demand is appropriate for Counts I through IV.[2]  (Doc. #57, p. 2 n.1.)

"A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary. See Brookhart v. Janis, 384 U.S. 1, 4–5, 86 S. Ct. 1245, 1246–47, 16 L. Ed. 2d 314 (1966); see also Leasing Serv. Corp. v. Crane, 804 F.2d 828, 833 (4th Cir. 1986)."  Bakrac, Inc. v. Villager Franchise Sys., Inc., 164 F. App'x 820, 823–24 (11th Cir. 2006).  "[W]hile

---

[2] There is no disagreement as to Count V being excluded from the jury demand.

'the seventh amendment right is . . . a fundamental one,' courts have recognized that 'it is one that can be knowingly and intentionally waived by contract.'" Aponte v. Brown & Brown of Fla., Inc., 806 F. App'x 824, 827 (11th Cir. 2020) (citations omitted).

Paragraph 12 of the Production Agreement states, "The parties waive any right to a trial by jury in the event of litigation arising out of this Agreement." (Doc. #49-1, p. 7.) Similar to a clause requiring arbitration, the Court focuses "on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties." Telecom Italia, SpA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001).

In Princess Cruise Lines, the Eleventh Circuit noted that "[i]f the cruise line had wanted a broader arbitration provision, it should have left the scope of it at "any and all disputes, claims, or controversies whatsoever" instead of including the limitation that narrowed the scope to only those disputes, claims, or controversies "relating to or in any way arising out of or connected with" the agreement. Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1218 (11th Cir. 2011). See also Jaffe v. Bank of Am., N.A., 395 F. App'x 583, 586 (11th Cir. 2010) (examining an "unequivocal" and broader waiver "arising out of, in connection with or in any way pertaining to, this agreement.").

"The term 'arising out of' is broad, but it is not all encompassing." Princess Cruise Lines, 657 F.3d at 1218. Disputes

that are not related-with at least some directness-to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause." Telecom Italia, 248 F.3d at 1116.  The Florida Supreme Court has held that 'arising out of' is 'broader in meaning than "the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1275 (11th Cir. 2008) (quoting Taurus Holdings, Inc. v. United States Fid. and Guar. Co., 913 So.2d 528, 539 (Fla. 2005)).

In this case, the waiver is limited to "arising out of" the Production Agreement to produce Vannamei breeders for export of live shrimp outside the United States.  Under the Production Agreement, either party may terminate for cause, including for: the "intentional act of fraud, theft or any other material violation of law"; the "intentional disclosure of confidential information"; or the "intentional engagement in any competitive activity which would constitute a breach of duty." (Doc. #1-1, p. 2.)  The Production Agreement also contains several competitive restrictions:

> a. Neither of the parties may knowingly or purposely circumvent, or cause the breach of, or undermine an exisiting [sic] breeders sales contract. Both companies are free to offer their breeders on a best effort's basis to existing or potential customers worldwide. Both parties agree to compete in an honest and

ethical way. Both parties agree not to disparage or make false claims about each other in any way, while this Agreement is in force and for one year after the Termination Date.

b. SyAqua Agrees not to offer any Florida-grown SyAqua Breeders to any hatchery located in the U.S. and Canada.

c. The commercial name of "SyAqua" in any form remains the sole property of SyAqua Group Incorporated and may not be used, directly or indirectly, by AM or any individual or entity affiliated with AMI without written approval.

d. While the Agreement is in force, AMI agrees that they will not enter into any similar agreement with other parties for the use of the Hatchery to raise or store Breeders.

e. SyAqua will supply, without charge, up to 1,000 pairs of commercial production Breeders annually for use in the hatchery in order for AM I to produce commercial PL's that it will market as its "Kentucky" line for its shrimp farming customers.  If AMI needs more than 1,000 pairs per year, then AMI will pay SyAqua $65.00 per Breeder.

f. AMI may sell the "Kentucky" PL's to any shrimp farming customer in North America and the EU. AMI may not sell any "Kentucky" PL's to any customer who operates a hatchery.

g. AMI requires that all customers of the "Kentucky" line PL's sign an agreement that limits their ability to use the PL's for growout purposes only.

(Id., p. 20.)  The allegations in Counts I through IV clearly could have been brought as claims for breach of the Production Agreement, which covers intentional disclosure of confidential information or competitive activity, "willful conduct . . . injurious to a party to the Agreement, monetarily or otherwise,"

false and disparaging claims about one another, and the limitation of customers of the "Kentucky" line for grow out purposes only. The claims originate from the performance of the contract, and the Production Agreement provides a basis for termination that covers the factual allegations in Counts I through IV.

Claims of unfair competition and theft of confidential information clearly "arise out of" the terms and performance of the Production Agreement, and therefore a jury demand is deemed waived as to Counts I through IV, and all counts.

Accordingly, it is hereby

**ORDERED**:

Defendant's Motion to Strike Plaintiff's Jury Demand (Doc. #49) is **GRANTED** and the Demand for Jury Trial (Doc. #46) is **stricken**.  The Clerk shall reset this case as a bench trial.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of July 2021.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record